GATES *v.* McLAULIN.

1. SPECIFIC PERFORMANCE—ATTORNEY AND CLIENT—CONTRACT FOR RECOVERY OF LAND—IDENTIFICATION.

In a suit for specific performance of a contract between a firm of attorneys consisting of one of plaintiffs and the decedent of the other and defendant whereby the firm was employed by defendant as her attorneys to prosecute a contemplated suit to recover certain lands and the firm was to have as compensation a one-third interest in recovered lands, a decree for specific performance was not legally objectionable because the specific lands to which such interest should attach were not described in the contract or because the lands were to be divided when re-

covered, as after recovery the contract would relate to the recovered lands specifically, and it would be as though the specific items recovered had been originally written in the contract.

2. SAME—EQUITY—ADEQUATE REMEDY AT LAW—CONTRACT FOR RECOVERY OF LAND.

In such suit plaintiffs had no adequate remedy at law, where what the recovered lands were worth was in dispute and it was not agreed by the parties that the valuation was to be fixed by triers.

3. ATTORNEY AND CLIENT—CONTRACTS—CONTINGENT FEES.

Contracts between attorney and client will be scrutinized with care by the courts.

4. SAME.

Before entering upon the business of a client, an attorney may stipulate the measure of his compensation, and, if the client assents, the contract is valid and free from objection.[1]

Appeal from Wayne; Hosmer, J. Submitted October 4, 1917. (Docket No. 21.) Decided December 27, 1917. Rehearing denied April 25, 1918.

Bill by Lulu F. Gates, individually and as executrix of the last will of Jasper C. Gates, deceased, and William H. Wetherbee against Serena McLaulin for the specific performance of a contract. From a decree for plaintiffs, defendant appeals. Affirmed.

*Harold H. Emmons,* for plaintiffs.

*Daniel M. McLaughlin* (*Thomas A. Bogle* and *Robert E. Bunker,* of counsel), for defendant.

*Leo M. Butzel* (*William S. McDowell,* of counsel), for defendant on motion for rehearing.

OSTRANDER, J. Plaintiffs, Lulu F. Gates, individually and as executrix of the last will of Jasper C.

[1]On right of attorney who takes case on contingent fee or for certain percentage to implied or equitable lien on fund recovered, see note in 27 L. R. A. (N. S.) 634.

Gates, deceased, and William H. Wetherbee, complain that the defendant refuses to perform a contract made by her with Jasper C. Gates and Wetherbee, performed on their part, and they seek specific performance of the contract, which it is asserted may involve also, as matter of complete relief, partition of certain real estate, or its sale and a division of the proceeds thereof. The defendant answered, and claimed affirmative relief, praying the court to set aside the said alleged contract and cancel it as invalid, to require the payment by plaintiff Wetherbee to defendant of a sum of money in his hands, and to determine and state a reasonable sum to which the plaintiffs are entitled. The cross-bill was answered.

It appears that, when the cause was brought on for hearing, the solicitor for plaintiffs stated to the court the substance of the matters contained in the pleadings, produced the contract relied upon, and said:

"The case being admitted by the pleadings, having stated that to your honor, we will rest upon the admission."

Thereupon the solicitors for defendant moved to dismiss the bill because:

"It appeared from the bill itself that plaintiffs were not entitled to the relief prayed for, namely, that the defendant should be decreed to convey to the plaintiffs an undivided third interest in and to the lands"

—describing them, for the reasons:

"(1) Because there is no equity in the bill.

"(2) Because it does not appear from the bill that the plaintiffs and defendant ever made any contract with reference to the lands on Michigan avenue and the land on Greenwood avenue hereinbefore particularly described, or either of said parcels of land; on the contrary, it appears from the bill that the lands last above described were not the subject of the contract between the parties.

"(3) Because it appears from the bill that the par-

ties to the contract did not contract with reference to any particular lands.

"(4) Because it appears from the bill that the parties to the contract made no contract, the one to convey, the other to acquire, the specific lands described in the bill.

"(5) Because it appears from the bill that the plaintiffs and defendants at no time made a contract whereby the plaintiffs were to have a third of $26,000, or any other sum in money; but, on the contrary, it appears from the bill that the defendant and plaintiffs had not at any time made such a contract.

"(6) Because it appears from the bill that the plaintiffs have a full, complete, and adequate remedy at law.

"(7) Because it appears from the bill that there was a lack of mutuality of obligation and of remedy in the contract set up in the bill.

"(8) Because it appears from the bill that the contract (Exhibit 1) was of such a kind, character, and nature that the court was bound in the exercise of a sound judicial discretion to deny specific performance of the same.

"(9) Because it appears from the bill that the contract (Exhibit 1) is one-sided, unfair and unconscionable.

"(10) Because it appears from the bill that the specific performance is the main relief prayed for, all other relief prayed for being incidental thereto."

The motion was overruled. The solicitor for plaintiffs then stated that plaintiffs rested upon the admissions in defendant's pleadings, the contract and the deeds therein referred to, and the files in the case of *Serena McLaulin* v. *James H. McDonald,* "out of which this case arose," which files and records and the deeds were considered as read in evidence. Defendant rested. There was a decree for plaintiffs.

It is said by plaintiffs, appellees, that the agreement relied upon and its complete performance by Gates & Wetherbee are admitted in the answer and cross-bill of defendant or proved by uncontradicted evidence,

the affirmative defense that the contract was procured by plaintiffs under circumstances affecting its validity in their hands is not proven, nor was there an offer to prove it, and that the defense made in argument is technical and unfounded.

Defendant, appellant, says: (1) There is no equity in the bill; (2) the decree is not supported by proofs; (3) the contract is not enforceable. Clearly, there are some admitted facts. The defendant, for herself, and Jasper C. Gates and William H. Wetherbee, for themselves, executed a writing, dated July 10, 1912, which evidences an agreement between them. It is recited therein that in the year 1899 the defendant, personally, and the defendant and her husband, by certain deeds transferred to one James H. McDonald, of Detroit, real estate situated in Detroit and in the village of Hamtramck, Wayne county, Mich., and reference is made to the deeds and to the record of them. It is recited that it is believed that the said McDonald is, as to the property described in said deeds, the trustee of the party of the first part, and bound to account to her for said property and its proceeds. There are other recitals. The terms of the agreement are:

"(1) Said party of the first part does hereby retain said parties of the second part as her attorneys, solicitors, and counselors for the purpose of commencing and prosecuting such suits in equity, actions at law, and other proceedings as may be necessary or desirable for the purposes aforesaid, and within 30 days of the date of this agreement, will pay to said parties of the second part the sum of two hundred dollars ($200) as a retainer.

"(2) Said party of the first part will pay all of the actual necessary expenses of conducting such suits and proceedings, the said party of the second part receiving no other or further compensation in any manner or form than that provided for expressly by this agreement, and also undertaking that they will

to the extent of their ability avoid all actual unnecessary expense to said party of the first part.

"(3) In consideration of the premises, said parties of the second part agree that they will perform all the necessary legal services prosecuting to a final termination through the court of last resort of this State, if necessary, and through whatever other courts such proceedings, or any part of the same, may be removed.

"(4) It is mutually agreed between the parties hereto that said suit shall not be in any manner settled or compromised without the consent of both parties to this agreement.

"(5) Upon the compromise or other termination of said suits and proceedings, the amounts paid out in accordance with this agreement by said party of the first part shall first be deducted, and the balance that shall be recovered or realized in any manner or form, whether consisting of money, lands, or other assets, shall be divided between the parties hereto as follows: Said parties of the second part shall receive one-third in full satisfaction of all their claims growing out of the premises, and the balance shall be the property of the party of the first part."

It is admitted that pursuant to this agreement, and in the name of Serena McLaulin, as plaintiff, a bill of complaint was filed in the Wayne circuit court, in chancery, against said McDonald and others, as defendants, signed by William H. Wetherbee, Jasper C. Gates, and Daniel M. McLaughlin (son of defendant), respectively, as solicitors for complainant. This bill was answered by the said McDonald and by another of the defendants. The bill was filed in August, 1912, and the answer of said McDonald was filed December 4, 1912. There was a death of one defendant and a revivor against his heirs at law. Various proceedings were taken, as the files and records disclose. Thereafter, in January, 1916, an agreement of parties was reached and was reduced to writing, entitled in said cause, reciting:

"Whereas, an agreement has been reached between the parties to said above-entitled cause for settlement of the same, and for that purpose the said second parties have signed and executed for delivery to first party a certain release to the said James H. McDonald, bearing date the 8th day of January, A. D. 1916:

"Now, therefore, in consideration of the delivery of said release, said first party does hereby agree that he will forthwith pay, or cause to be paid, to the solicitors in said cause, for said Serena McLaulin, the sum of twenty-six thousand dollars ($26,000) in cash, and also that he will forthwith make, execute, and deliver to said solicitors for Serena McLaulin good and sufficient conveyance of the following described pieces or parcels of land situated and being in the city of Detroit, county of Wayne, and State of Michigan, said title to be free and clear from all liens and incumbrances and defects whatsoever, occurring or accruing because of or through the acts or neglect of first party, or any person or persons claiming or holding by, through, or under him, since the 9th day of September, A. D. 1899, to wit:

"(A) Lot three (3) and all of lot two (2) in block forty-five and one-half (45½) of the Cass Farm, except that part of lot two (2) described in a deed from John D. McLaulin and Serena McLaulin to Catherine McLaughlin, recorded in the Wayne county register's office in Liber 287 of Deeds, at page 397. Subject to three leases, to wit: A lease to Meyer Barnett, expiring April 30, 1917, on premises numbered 201 and part of No. 203 Michigan avenue; a lease to Morris Grossman, expiring April 30, 1916, on the premises numbered 203 Michigan avenue; and a lease to Leo Chodorowoski and Cæser Chodorowoski, expiring April 30, 1916, on the premises numbered 205 Michigan avenue—said leases to be assigned to Serena McLaulin forthwith, and all rents, etc., to belong to her from and after January 1, 1916.

"(B) The north sixty feet (60 ft.) of lots two (2) and three (3) in block four (4), Moross and Moran's subdivision, said lots being situated at the northwest corner of Milwaukee and Greenwood avenues in the said city, and said lot three being otherwise described as lot three (3) in block four (4) of Weber's subdivi-

sion, including all rights and benefits and subject to the obligation, all as contained in the agreement recorded in Liber 785 of Deeds, page 144, Wayne county register of deeds' office.

"And will at the same time procure and deliver to the solicitors of said Serena McLaulin good and sufficient abstracts of title, satisfactory to said solicitors, showing title as above.

"First party also agrees that the judgments entered in the three cases of *McDonald* v. *Warren, et al.*, in the circuit court for the county of Wayne be dismissed as satisfied, and the bonds, given in said cause, be canceled, and that he will execute and deliver to second parties such stipulations as may be necessary for the disposition of said cases; and it is also understood and agreed that the special administrator of the estate of John D. McLaulin, deceased, appointed by the probate court for the county of Wayne, in March, 1913, will file in said probate court his resignation as such administrator, and will present no claim for fees or expenses as such administrator, and said special administrator shall not be called upon to account for any funds he has collected.

"It is further understood and agreed that said first party will deliver the filled gold watch and chain, formerly carried by the late John D. McLaulin, to said Serena McLaulin. It is also agreed between said parties that upon the payment of said sum of twenty-six thousand dollars ($26,000) as above specified, and the conveyance of said described property, and the performance of the acts herein specified to be performed by said first party, the said suit so pending in the circuit court for the county of Wayne, in chancery, shall be discontinued by the dismissal of the bill of complaint therein, without cost to either party. Said first party to procure the assent to said dismissal of such defendants in said suit as are not parties to this agreement."

This was signed by all parties, and, following the signatures, is the following:

"We, the undersigned, Serena McLaulin, Mary E. Robson, David McLaughlin, Grace D. McLaulin, Andrew McLaulin, Philip McLaulin, Daniel McLaughlin,

Alexander McLaughlin, Martin McLaulin, and Lucy McLaulin, being the widow and all the surviving children of John D. McLaulin, which name McLaulin is by some of us commonly spelled 'McLaughlin,' for a valuable consideration, payment and receipt whereof is hereby acknowledged, do hereby release, discharge, and acknowledge full and complete satisfaction of any and all claims, demands, and causes of suit or action that we, or any of us, have or might have and maintain against James H. McDonald, Elizabeth McDonald, Mary M. McDonald, and Margaret A. McDonald, children of said James H. McDonald, the estate of said John D. McLaulin, deceased, or any or either of them, including all claims, demands, and causes of action or suit, which are the subject-matter of a suit in equity, now pending in the circuit court for the county of Wayne, in chancery, State of Michigan, wherein said Serena McLaulin is complainant and said James H. McDonald and others are defendants, being chancery cause No. 41-746, and including also all claims and demands, causes of action or suit, that the undersigned, or any of them, have or might have or maintain for or on account of any of the parcels of the real estate described in the bill of complaint in said case.

"And the undersigned do further for like consideration sell, assign, and set over and forever quitclaim to the said James H. McDonald all right, title, and interest of them and of each of them of, in, and to each and all of the said parcels of real estate described in said bill of complaint, except the following descriptions of real estate situate in the city of Detroit, Wayne county, Michigan, to wit: (Describing certain parcels of real estate, and signed and acknowledged by Serena McLaulin and others, interested parties.)"

Deeds were executed and delivered as contemplated, and $26,000 by way of a check was paid; the check, running to Serena, being delivered to plaintiff Wetherbee, later indorsed by her, by her son as attorney in fact, and the money paid thereon and deposited in a special account. Serena McLaulin refused to divide the personalty and realty, the fruits of the said liti-

gation and compromise, with her solicitors according to the terms of said agreement, and they filed the bill of complaint in this cause. They aver in the seventh paragraph of the bill:

"(7) That the value of the property received in said settlement, as agreed by the parties, is as follows, to wit: The three stores on Michigan, the lots extending through to Porter street, $95,966; the 60 feet on Greenwood avenue, near Grand boulevard, $5,000, all of which real estate will be more particularly described hereafter, the sum of $26,000 in cash and the cancellation of a judgment in the circuit court for the county of Wayne, amounting to $450—together with the allowance of certain claims against the estate of John D. McLaulin at Toronto, Ont., amounting to about $1,450, or a total of $128,866. That there were certain expenses which had been agreed upon by the parties to be deducted from this sum, amounting to $369, leaving a net sum realized from said compromise or settlement amounting to $128,496.96, of which plaintiffs are entitled to receive one-third according to the terms of said agreement."

They aver (paragraph 8 of the bill):

"(8) That there was not enough personal property received in said settlement, to pay to the plaintiffs herein their one-third of the value thereof, and when the defendant herein desired to receive and record the deed to the real estate, it was proposed by her that she would secure a loan on said property, and with this, and the balance of the cash received from said McDonald after payment of costs as aforesaid she would pay to the plaintiffs their one-third share or interest in said settlement in cash, in lieu of the undivided interest in said land, and plaintiffs believed she would do this, and relied upon her said statements and assurances; but she did not do so, and she has deferred and postponed, and still continues to defer and put off, the final settlement and division of the property belonging to the parties hereto by virtue of the terms and provisions of said agreement as aforesaid."

These charges in the bill are answered by her as follows:

"(7) As to the seventh paragraph of said bill this defendant denies upon information and belief that the value of the three stores on Michigan avenue stated in said bill to be $95,966 is the true value thereof, and upon like information and belief avers that their true value does not exceed $73,820. She admits that the 60 feet on Greenwood avenue is worth $5,000 as stated in said seventh paragraph. She avers that the sum of $26,000 in cash mentioned in said seventh paragraph was disposed of in the manner already stated in the preceding paragraph of this answer. She avers that the judgment referred to in said seventh paragraph was $435, and not $450, as therein stated. She denies that anything has been received on claims against the estate of John D. McLaulin stated in said seventh paragraph to be $1,450. This defendant avers that the expenses mentioned in said paragraph amounted to a sum greater than $369.04, but what they amounted to in the aggregate this defendant is not informed. She denies that the net sum realized from said compromise amounted to $128,496.96, and avers that the amount realized therefrom amounts to no more than $105,000, or thereabouts. She denies that plaintiffs are entitled to receive one-third of said sum according to the terms of said agreement, and avers that she has been advised and on information and belief charges it as a fact that said agreement is invalid and unenforceable.

"(8) As to the eighth paragraph of said bill, this defendant denies all the allegations of the eighth paragraph of said plaintiff's bill, save that she continues to defer and put off the final settlement, in respect to which allegation this defendant says that she has declined and refused, and still declines and refuses to make a settlement with the plaintiffs in this cause on the basis of paying them one-third of the value of all the property turned over on said compromise for their services in connection with their said employment as solicitors and counselors for this defendant. She admits that she has refused and still refuses to make a division of the property received on the compromise

of said matters as hereinbefore stated, because, as hereinbefore stated by this defendant, she denies that the said plaintiffs are entitled to any division of said property, but avers that said agreement mentioned in said paragraph is invalid, unenforceable and unconscionable. This defendant, further answering said paragraph, avers that she is, and at all times has been, ready to settle with the said plaintiffs and pay them all that their services in her behalf are reasonably worth. She further avers that she has been deprived of the means of making such settlement by the unauthorized act of the said William H. Wetherbee in converting the cash paid on said settlement to his own use in the manner hereinbefore stated."

In her cross-bill she sets up that originally she laid her matters in this connection before Mr. Wetherbee, and with him before Mr. Gates, establishing, in so doing, the relation as to each of them of client and attorney, and that they conducted an examination for her as her attorneys into the merits of her demand against McDonald; that there was no agreement concerning their compensation. Thereafter they presented the contract for their compensation to her, which she protested she would not execute; but, upon certain representations they made to her, and having confidence in them, and in reliance upon what they told her, she finally executed it. She says the contract is unconscionable, and because of the relations then existing between herself and her said counsel was void. She charges that they did not represent her as able and skillful counsel would have done; that additional counsel called in by them, at her expense, performed valuable services in the matter; and that the results were much less than they ought to have been. To employ the language of the cross-bill, it is this:

"(12) This defendant says that the said William H. Wetherbee and Jasper C. Gates did not represent her in said matters as reasonably able and skillful

and careful counsel should have done; that they suffered and permitted said cause to drag along for a period of more than 3½ years; that no proceedings in court were had, other than a partial opening of the case; that no testimony was taken in said cause; that they permitted said cause to be postponed term after term, against the remonstrance of this defendant; that they were urged by this defendant term after term to cause said cause to be tried; and this defendant charges that their procrastination in bringing the matter to a hearing was unnecessary, was detrimental to the interest of this defendant, and caused her needless expenses and anxiety; that they urged upon this defendant a settlement of said matter for a sum as low as $5,000, and never, prior to December, 1915, for any sum in excess of $15,000; that said William H. Wetherbee and Jasper C. Gates did not represent this defendant as reasonably able, skillful, and careful counsel should have done, in this: Although they claimed that they should be entitled to one-third of the amount recovered, they sought to persuade and use their influence upon this defendant as her counsel to persuade her to make an additional sacrifice of 10 per cent. of the total 'amount recovered as previously stated in paragraph 9 of this cross-bill. This defendant says upon information and belief, and so charges the truth to be, that the said McDonald's defense to her said bill was neither strong nor meritorious, and that the extent of the said McDonald's liability on any fair accounting would have been in excess of $200,000 as hereinbefore stated; that because of such delay, and because of the urgent solicitation of the said Wetherbee and Jasper C. Gates, this defendant consented to the compromise made as hereinbefore stated."

In a general way, omitting the statement of many details, I have set out the arrangement as it was in fact made, and the attitude and contentions of the parties as presented by the pleadings and by other documentary evidence. Their contentions aside, I have set out no facts which are not admitted or proven. In *Gibb* v. *Mintline*, 175 Mich. 626, 630 (141 N. W.

538, 539), this court, approving the rule stated by Mr. Pomeroy, said that:

"To entitle one party to specific performance of a contract against the other party thereto: 'The contract must be certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition, or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; finally, it must be capable of specific execution through a decree of the court.' "

This rule, or these rules, counsel for appellant asks to have applied here, and says:

"Not one of these requisites was established by the proofs heretofore referred to or by the admissions of defendant. All of them were in issue and even more."

It was the claim of Serena, and the theory of her bill filed against McDonald, that the descriptions of land theretofore conveyed to him by herself and herself and husband were, and had always been, her property. The deeds describe specific parcels of land; the contract made with her counsel refers to the deeds. It was in contemplation that the identical lands, or some of them, would be recovered freed from the alleged trust and from any claim McDonald might have upon them, and it was agreed that a one-third interest in any recovered lands should be the compensation of counsel. To which of them the interest of counsel should finally attach depended only upon which were recovered by decree or by compromise. When some of them were so recovered, then the contract of these parties related to them specifically. There is therefore no legal objection to a decree for the specific performance of the contract based upon the alleged fact that no specific lands are described therein, or based upon the notion that if these lands are divided the

court will be required to make a new contract for the parties, instead of the one they themselves made.

The contract could not be specifically enforced until there had been some recovery. It is of the essence of the contract that what should be finally recovered was to be divided. Therefore, by the agreement itself, it was in respect of the property to be divided to be made certain by what would alone make it enforceable at all, namely, by a recovery or a settlement. After recovery, it is as though the specific items recovered had been originally written in the contract—as though it was with special regard to them that the contract was made.

This disposes, to my satisfaction, of the defense principally relied upon in argument. It may be added that plaintiffs have no adequate remedy at law. What the recovered lands are worth is matter of dispute. It was not agreed by the parties that the valuation was to be fixed by triers. Quite the contrary.

Beyond doubt, the court will scrutinize with care contracts made between attorneys and a client. Here it fairly appears, upon the face of the record, that what the attorneys for defendant first did was to ascertain whether upon her statement and facts at hand they would enter at all upon the necessary litigation. They finally offered to do so upon terms. The agreement itself *retains* counsel "for the purpose of commencing and prosecuting such suits * * * as may be necessary," * * * and provides for a retainer to be thereafter paid. Defendant undoubtedly had confidence in them, or she would not have approached them, or finally made an agreement with them. But it is evident that until the agreement was made the relations of counsel to her matters were inquiring relations, and that it depended upon the result of the inquiries made and upon the terms of employment which should be agreed to whether they would undertake

to serve her.   Before entering upon the business of a client, an attorney may stipulate the measure of his compensation, and, if the client assents, the contract is valid and free from objection.   So, apparently, the fruits of the services performed were accepted by her. There is nothing before this court tending to prove that the settlement was one which she ought to have declined to make.

I am impressed that upon this record, applying the rules stated, no reason appears for refusing plaintiffs what their contract with defendant gives them.   If there are facts which support defendant's contentions, she has not brought them, as she might have done, upon the record.

The decree is affirmed, with costs to appellees.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.