WENZEL, Respondent, vs. CONRAD SCHMITT STUDIOS
and others, Appellants.*

*October 14—November 9, 1943.*

*Motion for rehearing denied, with $25 costs, on January 18, 1944.

162

164

For the appellants there were briefs by *Whyte, Hirschboeck, Minahan & McKinnon* of Milwaukee, and oral argument by *Herbert C. Hirschboeck.*

For the respondent there was a brief by *Bloodgood & Passmore* and *William E. Burke,* all of Milwaukee, and oral argument by *Mr. Burke.*

FOWLER, J. As appears more particularly from the foregoing statement of facts, suit was brought on a promissory note given to the grantor of land as part payment of the purchase price. The grantor indorsed the note to a bank for value before due. The bank sued the grantor and the maker and the accommodation indorsers to recover on the note. After judgment was ordered for recovery of the amount of the note, but before it was entered, a stipulation was signed by all the parties providing for a present payment and for payment of the balance in the future in instalments at specified times and for specified amounts which instalments the defendants agreed "to pay or cause to be paid," and for entry of judgment on failure to pay the instalments when due. Default having been made in these payments the bank assigned the note back to the grantor, and she assigned it to her husband, who was by order of court substituted as plaintiff in the suit, and he was awarded judgment against the maker and accommodation indorsers for the amount due on the note.

The appellants make two contentions: (1) The promissory note was merged in the settlement contract. (2) The possession of part of the lot by strangers to the title was a breach of the grantor's covenant of warranty, and the grantee may offset its damages resulting from the breach against the balance due on the note.

(1) (a) It is more particularly contended under head (1) that the substituted plaintiff showed title to the note and mortgage but not to any right of the Badger State Bank. But the stipulation by its own terms meets this contention fully. It expressly provides that on failure of the bank, "its successors and assigns to receive the said instalments on the due date thereof . . . [the bank] its successors and assigns" should have "the right to enter judgment in the above-entitled action for any balance due under the obligation set forth in the complaint." That obligation is the note itself. The substituted plaintiff is a "successor and assign" of the bank and obviously has the same right to enter judgment on the note that the bank would have had had it kept the note, and it was expressly agreed that "the successor and assign" of the bank might enter judgment as it was entered in the action that the bank commenced.

(b) The rest of appellants' argument on merger is based on the proposition stated in Restatement, 2 Contracts, p. 833, sec. 446:

"A contractual duty or a duty to make compensation is merged in the duty created by the subsequent formation of a sealed contract between the same parties providing for the same performance."

We are unable to perceive how it can be reasonably contended that a contract is "merged in a subsequent contract," when the subsequent contract, as in the instant case, expressly provides that on its breach judgment may be entered in a pending suit based on the original contract. There is also

in the brief of appellants a statement that the Wisconsin Annotations to sec. 446 state that "The Wisconsin cases are in accord with the Restatement." Two Wisconsin cases are cited as so in accord in the Annotations. One of them is *Matteson v. Matteson* (1882), 55 Wis. 450, 13 N. W. 463. The suit was foreclosure of a mortgage given to secure a bond promising to pay $620 to one person and pay $500 to him or to another. There was a note previously executed for $620. The other case is *Matteson v. Ellsworth*, 33 Wis. 488. The gist of it seems to be as stated in paragraph 1 of the syllabus that the giving of a note does not extinguish a prior existing debt for which the note was given. The point of these cases seems to be that sometimes a contract is merged in a subsequent contract and sometimes it is not, "which nobody can deny."

(c) Appellants also contend that the taking of additional security by the bank, when the time for payment was extended by the stipulation, merged the note in the stipulation. The whole argument of appellants on the question of merger seems to be fully met by the decision in *Wisconsin Trust Co. v. Cousins*, 172 Wis. 486, 503, 179 N. W. 801, where it is said:

"It is the long and well-settled doctrine in this state that a renewal by the giving of a new note or the extension of time in which to pay a pre-existing debt is not a discharge of the old and original obligation and the creation of a new obligation, but a mere carrying·on of the prior obligation, unless and except it appears that the parties agreed that it should be a destruction of the old and the creation of a new obligation. The following among other authorities so declare: [Citing cases.]

"The giving of additional security at the time of renewal or extension of time of payment of the pre-existing debt, either by the giving of a note of a third person or in some other form, does not alter the right of the creditor to continue to reap all the benefits to him that may surround the pre-existing obligation and does not relieve the debtor from his original obligation. [Citing cases.]"

(d) Appellants' counsel make in their brief some bald statements as to the want of title to the note and right of action in the substituted plaintiff in support of which they offer no reason and we are unable to perceive any. They also state that the substituted plaintiff is not asking foreclosure of the mortgage or enforcing the collateral security afforded by the quitclaim deed, but suggest no reason why he must, and we perceive none. They also say that payment to the substituted plaintiff will not secure reconveyance of the premises conveyed by quitclaim deed as security, but if payment be made and refusal to convey or delivery back of the deed is refused either one or both can be compelled by appropriate action.

(2) The claim of breach of warranty is based entirely on the mere facts of occupancy by strangers to the record title of a small shack that stood on a portion of the plat in which the premises involved are located shown as a public street, one corner of which projects six feet beyond the street line into the premises and that this shack had so stood and been occupied for more than twenty years. The shack had so stood and been occupied but the evidence as to its continuous occupation is rather indefinite and uncertain.

The claim of offset results from the contention that Mrs. Wenzel breached the covenant of warranty of title contained in her deed to the corporation. The supplemental answer prays judgment dismissing the complaint on the theory that the damages for breach of warranty claimed to be interest on the purchase-price payments until removal of the shack more than offset the amount due on the note, wherefore nothing was recoverable from the corporation and therefore nothing was recoverable from the accommodation indorsers.

The only thing in evidence as to any occupant is of mere possession, and "mere possession is not a sufficient basis for claim of title by adverse possession." *Bettack v. Conachen,* 235 Wis. 559, 565, 294 N. W. 57. And

"All reasonable presumptions are made in favor of the true owner in case of a claim by adverse possession, including the

presumption that actual possession is subordinate to the right of the true owner. *Illinois Steel Co. v. Budzisz* (1900), 106 Wis. 499, 82 N. W. 534. In order to constitute adverse possession against the title of the true owner, an adverse claim must be sufficiently open and obvious, both as to the fact of possession and its real adverse character, to apprise the true owner if in charge of the property and in the exercise of reasonable diligence of the fact and of an intention to usurp the possession of that which in law is his own. *Kurz v. Miller* (1895), 89 Wis. 426, 62 N. W. 182." *Bettack Case, supra,* p. 566.

Mrs. Wenzel was the true owner at all times here involved prior to her deed to the Studio corporation. There is no evidence that any occupant of the shack claimed ownership of the premises, or made any claim of adverse possession to her or did any act to apprise her that his possession of the corner of the shack was adverse.

Appellants also seem to contend that the six-foot projection at least constituted a breach of the covenant of seizin in the deed, citing *Lakelands, Inc., v. Chippewa & Flambeau Imp. Co.* 237 Wis: 326, 342, 295 N. W. 919, in support. But the text is only to the effect that the covenant is broken by one in possession "claiming adversely." They also claim that it breached the covenant for quiet and peaceable possession in the deed. This covenant is not breached unless the possession of the true owner is disturbed. *Bardeen v. Markstrum,* 64 Wis. 613, 25 N. W. 565. The Studio corporation made every use of the premises that it wanted to make, and the presence of the shack in no way interfered with such use. True it bought the lot intending to erect a building on it, and it had plans made for a building on it, and the corner of the shack would have interfered with the intended location of the building. But the evidence is clear that the erection of the building was abandoned for reasons entirely unconnected with the presence of the shack.

*By the Court.*—The judgment of the circuit court is affirmed.